# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**MARTINE GOODEN,**

    **Plaintiff,**

    v.                                                           **Civil Action 2:10-cv-116**
                                                              **Judge Michael H. Watson**
                                                              **Magistrate Judge E.A. Preston Deavers**

**GORDON MCDANILES,** *et al.***,**

    **Defendants.**

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, Martine Gooden ("Plaintiff"), an Ohio inmate who is proceeding *in forma pauperis* without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against Defendants Gordon McDaniels, Robert Loeloff, and Warden Stuart Hudson, alleging, *inter alia*, sexual harassment and retaliation. This matter is before the Magistrate Judge for a report and recommendation on Defendants' Motion for Summary Judgment. (ECF No. 20.) For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED**. Additionally, the Court **DENIES** Plaintiff's request to deny Defendants' Motion in order to permit additional discovery. (ECF No. 30.)

### I. BACKGROUND

Plaintiff participated in a cooking apprenticeship program offered at the Pickaway Correctional Institution ("PCI") between March 9, 2009, and January 2010. Plaintiff worked under the supervision of PCI's food service coordinator, Defendant McDaniels.

On December 25, 2010, Plaintiff and another inmate were involved in an altercation. Defendant McDaniels separated Plaintiff and the inmate. The inmate reported that Plaintiff had

a homemade knife, which McDaniels found in a nearby trash container. McDaniels cited Plaintiff for a rule in fraction for possessing a homemade knife. Plaintiff alleges that McDaniels conspired with inmates to fabricate the allegations of his possession of a homemade knife. The Rules Infractions Board ("RIB") found Plaintiff "not guilty" because his guilt or innocence turned on which inmate's version of events the RIB chose to believe. McDaniels returned to his work assignment in PCI's food services area.

On January 8, 2010, after the RIB found Plaintiff not guilty of possessing a homemade knife, Plaintiff filed a grievance against McDaniels, asserting that McDaniels had sexually harassed him by making inappropriate comments of a sexual nature. He also complained that he had not been able to return to his food services assignment.[1] Specifically, Plaintiff alleged that McDaniels often inquired into the size of Plaintiff's penis, proposed oral and anal sex with Plaintiff and other inmates, used foul racial language, and proposed sexual favors in exchange for special treatment at PCI. Although Plaintiff alleges that McDaniels had a history of making those types of comments, he did not report any such behavior until after McDaniels had written him up for possessing a homemade knife. McDaniels denies ever making any harassing comments. Defendants offer uncontradicted evidence establishing that no other inmate had ever reported McDaniels for making offensive comments and that McDaniels' co-workers had not ever observed him verbally harassing inmates.

McDaniels' supervisor, Defendant Loeloff, responded to Plaintiff's grievance on January 15, 2010. In his response, he noted McDaniels' denial of Plaintiff's accusations and that

---

[1]The record evidence demonstrates, and Plaintiff does not dispute, that contrary to his grievance, he did return to his assignment after the RIB found him not guilty of possessing a homemade knife.

Plaintiff had been permitted to return to his food services assignment. Thereafter, Plaintiff continued to accuse McDaniels of making harassing comments. Plaintiff represents that he reported McDaniels for making harassing comments to Loeloff on more than three occasions. Although he did not find Plaintiff's accusations credible, Loeloff asserts that he nonetheless removed Plaintiff from PCI's food services apprenticeship program because he "believed it was prudent to remove [Plaintiff] from the area in order to avoid any future accusations . . . [and] if [Plaintiff's] accusations were true . . . this would have prevented any future sexual harassment." (Loeloff Decl. ¶ 7, ECF No. 20-2.) Loeloff further explained that as PCI's food services manager, he did not have the authority to remove an employee, but he did have the authority to remove an inmate from the work area. (*Id*.)

Plaintiff filed the instant action on February 16, 2011. He alleges that McDaniels verbally harassed him and that Loeloff retaliated against him. He names Warden Hudson as a Defendant, but makes no allegations concerning him. In his Complaint, Plaintiff asserts that he has exhausted his administrative remedies. In support of this assertion, he attached a grievance form entitled "Appeal to the Chief Inspector," dated February 6, 2010, to his Complaint. (ECF No. 3-1.) The form requires him to state why he is appealing the decision of the "Managing Officer and/or the Inspector of Institutional Services" and to attach, among other documents, the "Disposition of Grievance." (*Id*.) Plaintiff did not attach the "Disposition of Grievance." He did, however, attach a "Notification of Grievance" dated January 22, 2010, that he filed with the Institutional Inspector. (*Id*.) Plaintiff alleges that the Institutional Inspector failed to timely respond to his grievance. In the body of his "Appeal to the Chief Inspector," Plaintiff complains of verbal sexual harassment by McDaniels and retaliation by Loeloff. (*Id*.) Defendant did not

file a grievance against Defendant Warden Hudson.

The Chief Inpector's Office never rendered a decision on Plaintiff's "Appeal to the Chief Inspector." According to Defendants, no decision was rendered because Plaintiff did not properly file an appeal. Defendants explain that the purported appeal was filed prior to Institutional Inspector's decision and prior to the fourteen-day period that the Institutional Inspector had to respond to the grievance. The record demonstrates that Plaintiff mailed the "Appeal to the Chief Inspector" under another inmate's name and number and that Assistant Chief Inspector for the Ohio Department of Rehabilitation and Correction ("ODRC"), Donald Coble, received the purported appeal on February 4, 2010, even though Plaintiff dated it February 6, 2010. (Coble Decl. ¶¶ 3, 4, ECF No. 20-6; Appeal to the Chief Inspector, ECF No. 20-7 (date-stamped received on February 4, 2011); Appeal Address Label, ECF No. 20-8 (return address another inmate's name and number).) Mr. Coble represents that Plaintiff had been previously warned about attempting to file appeals prematurely. Because Plaintiff's appeal was prematurely filed before February 6, 2010, the Chief Inspector's office treated it as correspondence. Although he has no recollection of his treatment of Plaintiff's premature appeal, Mr. Coble states that his normal practice would have been to contact PCI to report the issue of a premature filing.

On May 18, 2011, Defendants filed the subject Motion for Summary Judgment. (ECF No. 20.) Defendants contend that Plaintiff's claims are barred because he failed to exhaust his administrative remedies. Alternatively, Defendants assert that they are entitled to summary judgment because McDaniels' alleged verbal harassment is not actionable, there is no evidence of retaliatory motive, and Plaintiff does not allege personal involvement by Defendant Warden

4

Hudson. Finally, Defendants contend that they are entitled to qualified immunity.

Plaintiff opposes Defendants' Motion. Plaintiff does not dispute that he mailed his Appeal to the Chief Inspector under another inmate's name or number. Nor does he dispute that he post-dated the appeal and prematurely filed it before February 6, 2010. Instead, he appears to rely on Mr. Coble's acknowledgment that he received his prematurely-filed Appeal to the Chief Inspector as evidence that demonstrates that he properly exhausted his administrative remedies with regard to his allegations against Defendants McDaniels and Loeloff. Plaintiff does not dispute that he failed to file a grievance against Defendant Warden Gooden.

Plaintiff has also filed four supplemental memoranda or exhibits since filing his Memorandum in Opposition. (*See* ECF Nos. 26, 29, 30, and 37.) In the first of two these supplemental filings (ECF No. 26 and 29), Plaintiff alleges that he overheard McDaniels make a sexually inappropriate comment in September 2011. In his third supplemental filing (ECF No. 30), Plaintiff asserts that Defendants' Motion for Summary Judgment is premature because of the "lack of discovery." He asks the Court to deny Defendants' Motion on this ground. In Plaintiff's final supplemental memorandum (ECF No. 37), he attaches exhibits he asserts support denial of Defendants' Motion for Summary Judgment. The first exhibit is a January 28, 2011 disposition of grievance filed by Plaintiff in which the institutional inspector denied Plaintiff's grievance for insufficient evidence, indicating that he was not the acting institutional inspector when the alleged incidents occurred, that he was unable to find the requisite informal complaint resolution, and that McDaniels is not available for him to interview. (ECF No. 37-1.) The second and third exhibits are informal complaint resolutions Plaintiff submitted to the warden on November 1, 2011, alleging retaliation for the filing of this action and asserting that McDaniels

is available to interview at PCI.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts[.] [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute."  *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011).  "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate."  *Stanberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. ANALYSIS

**A. Discovery**

As a preliminary matter, the Court rejects Plaintiff's unsupported assertion that Defendants' Motion for Summary Judgment should be denied "because of lack of discovery." (ECF No. 30.) Under Federal Rule of Civil Procedure 56(d), when a party is faced with a motion for summary judgment, it may "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ. P. 56(d).[2] "Bare allegations or vague assertions of the need for discovery are not enough." *Summer v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Rather, the nonmovant must demonstrate "to the district court [its] need for discovery, what material facts [it] hope[s] to uncover, and why [it has] not previously discovered the information." *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 282 (6th Cir. 2005) (internal quotations omitted). Finally, the United States Court of Appeals for the Sixth Circuit has emphasized that "[t]ypically, when the parties have no opportunity for discovery, denying the [Rule 56(d)] motion and ruling on a summary judgment motion is likely to be an abuse of discretion." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008). Here, Plaintiff has not complied with Rule 56(d)'s procedural requirements. Instead, Plaintiff simply makes the conclusory statement that Defendants' Motion should be denied because there has been a lack of discovery. Further, Plaintiff received full opportunity to conduct discovery—the discovery period closed before Defendants' filed their Motion for Summary Judgment. Thus, the Court **DENIES** Plaintiff's request to stay or deny Defendants' Motion to permit additional

---

[2]As the United States Court of Appeals for the Sixth Circuit recently noted, "[r]ecent amendments to the rules moved the provision formerly found in subdivision (f) to subdivision (d). *Murphy v. Grenier*, No. 09-2132, 2011 WL 180780, at *4 n.1 (6th Cir. Jan. 19, 2011).

discovery. (ECF No. 30.)

**B.      Exhaustion**

Defendants argue that the Court should dismiss Plaintiff's claims because he failed to exhaust his administrative remedies. Failure to exhaust is an affirmative defense under the Prison Litigation Reform Act ("PLRA"). *Jones v. Bock*, 549 U.S. 199, 216 (2007). Because the undersigned concludes that Defendants have properly raised and proven this affirmative defense, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's claims **WITHOUT PREJUDICE**.

Under 42 U.S.C. § 1997e(a), as amended by the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

8

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120–9–31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at ODRC must comply with its three-step grievance system. *Id*. For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120–9–31(K)(1). If the inmate is not satisfied with the results, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120–9–31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. *Id*. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120–9–31(K)(3). An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector. In circumstances where the inmate alleges misconduct on the part of the warden or inspector of institutional services at the prison where he is confined, he may initiate a grievance directly with the office of Chief Inspector. *See* Ohio Admin. Code § 5120-9-30(M). Plaintiff, like all other inmates in the custody of ODRC, received both written and oral instructions on how to use the grievance system, including instructions on appeals to the Chief Inspector's office and how to file direct grievances to that office, as required by Ohio Admin. Code § 5120-9-31(D). (Coval Decl. ¶ 7, ECF No. 20-10.)

The undersigned concludes that Defendants have satisfied their burden of proving that

Plaintiff failed to exhaust his administrative remedies with regard to Defendant Warden Hudson. Defendants submitted the declaration of Linda Coval, the Deputy Chief Inspector for ODRC, in which she represents that "there has never been any grievance filed by [Plaintiff] against Warden Stuart Hudson." (Coval Decl. ¶ 8, ECF No. 20-10.) Plaintiff does not dispute Ms. Coval's representation. Accordingly, the undersigned **RECOMMENDS DISMISSAL** of Plaintiff's claims against Defendant Warden Hudson **WITHOUT PREJUDICE** for failure to properly exhaust his administrative remedies. *See Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)) ("A dismissal under § 1997e should be without prejudice.")

The undersigned likewise concludes that Defendants have satisfied their burden of proving that Plaintiff failed to exhaust his administrative remedies with regard to Defendants McDaniels and Loeloff. Plaintiff acknowledges that he filed his Notification of Grievance with the Institutional Inspector on January 22, 2010. The Institutional Inspector therefore had fourteen days from January 22, 2010, to issue a written response. *See* § 5120–9–31(K)(2). Prior to the expiration of the fourteen days, on February 4, 2010, Plaintiff attempted to appeal his grievance to the Chief Inspector. He post-dated the purported appeal to February 6, 2010, however, such that it appeared as if he had waited the requisite number of days to file his appeal. (*See* ECF No. 20-7 (dated February 6, 2010, but stamped received on February 4, 2010).) Plaintiff does not dispute that he disregarded the ODRC's stated procedures or that he post-dated his purported appeal. Nor does he dispute that he was aware of the proper procedures and that he had previously been warned about attempting to prematurely appeal his grievances. Further, Plaintiff advances no legitimate excuse for his departure from ODRC's procedural rules. He

instead glosses over the issue altogether and emphasizes Mr. Coble's acknowledgment that he received the purported appeal.  As set forth above, Plaintiff was required to "properly exhaust" his claims, which required him to follow the "critical procedural rules" of ODRC's grievance process.  *See Reed-Bey*, 603 F.3d at 324.  ODRC's rules relating to when an appeal of a grievance becomes ripe certainly constitute "critical procedural rules."  When Plaintiff filed his grievance with the Chief Inspector on February 4, 2010, the Institutional Inspector had issued no decision for the Chief Inspector to review.  Nor was one due.  Put another way, at that juncture, no dispute existed that was ripe for Plaintiff to appeal.  Consequently, the Chief Inspector's office properly treated Plaintiff's filing as correspondence.  Significantly, the Chief Inspector took no affirmative action that could have misled Plaintiff into believing that he had complied with ODRC's procedures.  At the expiration of the requisite fourteen days, Plaintiff did not file a proper appeal, depriving the prison of the opportunity to resolve the disputes he raised in his grievance against Defendants McDaniels and Loeloff.  Thus, the undersigned concludes that Plaintiff failed to exhaust his administrative remedies with regard to Defendants McDaniels and Loeloff and **RECOMMENDS DISMISSAL** of Plaintiff's claims against these Defendants **WITHOUT PREJUDICE**.

The conclusion that Plaintiff failed to exhaust his administrative remedies with regard to all of his claims against every Defendant obviates the need for consideration of Defendants' alterative bases for summary judgment.

## IV. DISPOSITION

For the reasons set forth above, the undersigned concludes that Plaintiff has not raised a material fact question on the affirmative defense of failure to exhaust administrative remedies.

Thus, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** and that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**. (ECF No. 20.) Additionally, the Court **DENIES** Plaintiff's request to deny Defendants' Motion in order to permit additional discovery. (ECF No. 30.)

## V. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date: December 15, 2011          /s/ *Elizabeth A. Preston Deavers*
                                 **ELIZABETH A. PRESTON DEAVERS**
                                 **UNITED STATES MAGISTRATE JUDGE**